Edward R. Fisher and Edward R. Fisher, t/d/b/a Fisher's Garage, Appellants *v.* Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellee.

Argued September 12, 1980, before Judges WIL-KINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*David A. Wion, Reynolds, Bihl and Schaffner,* for appellants.

*Harold H. Cramer,* Assistant Attorney General, with him *Ward T. Williams,* Chief Counsel, Transportation, and *Harvey Bartle, III,* Acting Attorney General, for appellee.

OPINION BY JUDGE MACPHAIL, October 23, 1980:

As a result of incidents occurring on May 17, 18 and 20, 1979, the motor vehicle inspection license of Fisher's Garage was suspended by the Department of Transportation (Department) for six months for fraudulent record keeping and for three months for faulty inspection. The official inspection mechanic's license issued to Edward R. Fisher (Fisher) was suspended for the same periods and for the same reasons. An appeal from the Department's actions was taken

to the Dauphin County Court of Common Pleas where Judge CALDWELL of that Court held the suspensions for fraudulent record keeping invalid but affirmed the suspensions for faulty inspection. Fisher has appealed the latter part of that order to this Court.

On May 17, 1979 a motor vehicle previously rejected for inspection by Fisher was returned to his garage for a reinspection. After that inspection was concluded and an official inspection certificate had been affixed to the vehicle, Fisher noticed an excessively loud noise emanating from the vehicle as it was being driven away. Suspecting an exhaust leak, Fisher made telephone contact with the operator of the vehicle and asked him to return it to the garage. Within two hours, the vehicle was returned and it was verified that indeed there was an exhaust leak.[1] Fisher told his customer that either he (Fisher) or the customer could fix the leak, but if the customer did the repairs, the inspection sticker would have to be removed. The customer elected to do the work himself and the inspection sticker was thereupon removed from the car. Three days later, the customer returned to Fisher's Garage with a garage supervisor from the Pennsylvania State Police. Noting three specific defects on the vehicle—the exhaust leak, a cracked windshield and an insecure trailer hitch—the trooper then charged Fisher with a faulty inspection. From the testimony before the trial court, it is clear that although Fisher did the paper work and actually signed the inspection certificate, in fact, his mechanic did most of the work and road-tested the vehicle. Department regulations provide that the inspection shall be performed by one certified inspection mechanic and that the vehicle shall be road-tested.

---

[1] When the customer returned the car for the reinspection, he informed the garage that he wanted "a piece of tail pipe put in behind the muffler because I had a leak there." For this repair he was charged $12.22.

Judge CALDWELL found from the evidence that there was an exhaust defect which could have been detected by Fisher if he had road-tested the vehicle as he was required to do before passing it for inspection. Pointing to our decision in *Department of Transportation, Bureau of Traffic Safety v. Snyder*, 37 Pa. Commonwealth Ct. 359, 391 A.2d 3 (1978) which held that a mechanic's failure to fully comply with regulations of the Department results in a faulty inspection, the trial judge sustained the suspensions for faulty inspection.

Fisher's sole contention in his appeal to this Court is that the trial court erred when it relied upon an allegedly independent basis for finding a faulty inspection, to wit, the failure of Fisher to road-test the vehicle. Fisher argues that the Department is somehow "locked in" by the trooper's findings of the leaking exhaust, the cracked windshield and the insecure trailer hitch as the bases for the faulty inspection charge. The argument is tenuous at best.

First, the charge against Fisher was a *faulty inspection*. The trooper's observations of what was wrong with the vehicle, as contained in his written report, were supportive of that charge but did not constitute the charge. The trooper's report also mentioned that another mechanic performed parts of the inspection for Fisher. As we have noted, this is also a violation of Department regulations.

Next, the trial court did find that the vehicle had a defect in its exhaust system when it was seen at Fisher's Garage by the trooper. The Court also found that if Fisher had road-tested the vehicle as he was required to do by Department regulations, the defect would have been discovered before the customer drove it away. When the inspection certificate was affixed, the vehicle had a defective exhaust and it had not been road-tested by the official inspection mechanic. Therein lies a faulty inspection.

While it is commendable that Fisher did attempt to rectify his error, it was, nevertheless, an error. It is, indeed, fortunate that the defect was relatively harmless to the operator and to the travelling public for the period of time the vehicle was operated before it was returned to the garage. A defect in brakes or tires, even though detected after the vehicle had been passed for inspection, could have constituted a danger to others even in the short period of time the vehicle was away from the garage. Therefore, the critical time to discover detectable defects is *before* the certificate of inspection is affixed. Such is the requirement of the Department's regulations.

Order affirmed.

### ORDER

AND Now, this 23rd day of October, 1980, the order of the Dauphin County Court of Common Pleas, dated September 13, 1979 sustaining the suspension for three months of Edward R. Fisher as an official inspection mechanic and the suspension for three months of the inspection license of Fisher's Garage, is affirmed.